NO.
12-05-00140-CV

 

                     IN THE COURT
OF APPEALS 

 

          TWELFTH
COURT OF APPEALS DISTRICT

 

                                TYLER, TEXAS

THE
STATE OF TEXAS                                 '                 APPEAL
FROM THE 

 

FOR THE
BEST INTEREST                          '                 COUNTY
COURT AT LAW

 

AND PROTECTION OF C.M.                        '                 CHEROKEE
COUNTY, TEXAS

                                                                                                                                                            

                                                     MEMORANDUM
OPINION

Appellant
C.M. appeals from an order of commitment for temporary inpatient mental health
services.  After a hearing without a
jury, the trial court ordered C.M. committed to Rusk State Hospital for a
period not to exceed ninety days.  In one
issue, C.M. asserts the evidence is legally and factually insufficient to support
the trial court=s
order.  We affirm.

 

                                                                Background

On
April 15, 2005, an application for court ordered temporary mental health
services was filed requesting the court commit C.M. to Rusk State Hospital for
a period not to exceed ninety days.  The
application was supported by a certificate of medical examination for mental
illness prepared by a physician, Dr. S. Lahiri, who examined C.M. on April 6,
2005.  








Dr.
Lahiri diagnosed C.M. as suffering from paranoid schizophrenia.  He found that C.M. is mentally ill; is likely
to cause serious harm to himself; and is suffering severe and abnormal mental,
emotional, or physical distress, is experiencing substantial mental or physical
deterioration of his ability to function independently, which is exhibited by
his inability, except for reasons of indigence, to provide for his basic needs,
including food, clothing, health, or safety, and is unable to make a rational
and informed decision as to whether or not to submit to treatment.  Dr. Lahiri reached these conclusions because
C.M. heard voices telling him to harm himself and responded  by engaging in Aself
injurious@
behavior.  Dr. Lahiri noted that C.M.
also suffered from persecutory delusions and believed there was a conspiracy
against him.

On
April 12, 2005, C.M. was examined by Dr. Vasantha Orocofsky who also prepared a
certificate of medical examination for mental illness.  Dr. Orocofsky concurred with Dr. Lahiri=s diagnosis and findings based upon
C.M.=s
auditory hallucinations, including Acommand
hallucinations@ telling
him to hurt himself, and his statements that he heard voices and then Ahits them out@
or Apains them out@
after Athey
enter his body.@

Dr.
Lahiri testified at the hearing, explaining that C.M. is suffering from
paranoid schizophrenia and that he hears voices telling him to harm himself.  In response to the voices, C.M. becomes
agitated, bangs his head, and hits his face. 
Although C.M.=s
condition improved after he was hospitalized, he continued to hear voices and
to respond by engaging in self injurious behavior.  According to Dr. Lahiri, these incidents
constitute a continuing pattern of behavior for which  C.M. requires close observation.  Dr. Lahiri also stated that C.M. believes
others were trying to harm him as part of a conspiracy against him.  Based upon these facts, Dr. Lahiri further
concluded that C.M. is suffering severe and abnormal mental, emotional, or
physical distress; is experiencing substantial mental or physical deterioration
of his ability to function independently, which is exhibited by his inability,
except for reasons of indigence, to provide for his basic needs, including
food, clothing, health, or safety; and is unable to make a rational and
informed decision as to whether or not to submit to treatment.  He stated that if C.M. were released, he
could probably recognize the dangers of walking into traffic, but would not be
able to make rational decisions such as to pay bills or get into an
apartment.  Dr. Lahiri also stated that
Rusk State Hospital was the least restrictive alternative for C.M. at the time.

On
cross examination, Dr. Lahiri stated that C.M. signed a written consent to
medication.  He agreed that this behavior
indicated C.M. had the capacity to make a rational and informed decision as to
whether or not to submit to medication treatment.  He also stated that based on C.M.=s therapeutic response to his
medication, he could be ready for a group home in Aa
month or so.@








C.M.
testified that in the free world, he does not hear voices telling him to hurt
himself and that he wants to try something Aoutside@ that is different.  Although he understands that Dr. Lahiri
believes he needs at least another month in the hospital before going to a
group home, C.M. asked to be released immediately and  hospitalized again if he needed additional
help.

The
trial court entered an order for temporary inpatient mental health services
after determining that the evidence supported the allegations in the
application for temporary mental health services and making specific findings
that C.M. is mentally ill; that he is likely to cause serious harm to himself;
and that he is suffering severe and abnormal mental, emotional, or physical
distress, is experiencing substantial mental or physical deterioration of his
ability to function independently, which is exhibited by his inability, except
for reasons of indigence, to provide for his basic needs, including food,
clothing, health, or safety, and is unable to make a rational and informed
decision as to whether or not to submit to treatment.  This appeal followed.

 

                                               Sufficiency of the Evidence

In
his sole issue, C.M. asserts the evidence is neither legally nor factually
sufficient to support the order of commitment. 
Instead, he argues, the State=s
evidence, if anything, merely shows that he may be mentally ill and may be in
need of hospitalization.  

Standard
of Review

In
a legal sufficiency review where the burden of proof is clear and convincing
evidence, the reviewing court must consider all of the evidence in the light
most favorable to the finding to determine whether a reasonable trier of fact
could have formed a firm belief or conviction that its finding was true.  In re J.F.C., 96 S.W.3d 256,
266 (Tex. 2002).  The reviewing court
must assume that the factfinder resolved disputed facts in favor of its finding
if a reasonable factfinder could do so.  Id.  A court should disregard all evidence that a
reasonable factfinder could have disbelieved or found to have been
incredible.  Id.  








In
addressing a factual sufficiency of the evidence challenge, we must consider
all the evidence in the record, both that in support of and contrary to the
trial court=s
findings.  In re C.H., 89
S.W.3d 17, 27-29 (Tex. 2002).  This court
must give due consideration to evidence that the factfinder could reasonably
have found to be clear and convincing.  Id.
at 25.  We must determine whether the
evidence is such that a factfinder could reasonably form a firm belief or
conviction about the truth of the State=s
allegations.  Id.  We must also consider whether the disputed
evidence is such that a reasonable trier of fact could not have reconciled that
disputed evidence in favor of its finding. 
In re J.F.C., 96 S.W.3d at 266.  Appellate courts retain deference for the
constitutional roles of the factfinder.  In
re C.H., 89 S.W.3d at 26.  The
trier of fact is the exclusive judge of the credibility of the witnesses and
the weight to be given their testimony.  See
id. at 27; In re J.J.O., 131 S.W.3d 618, 632
(Tex. App.BFort
Worth 2004, no pet.).

Applicable
Law

The
trial judge may order a proposed patient to receive court ordered temporary
inpatient mental health services if the judge or jury finds, from clear and
convincing evidence, that the proposed patient is mentally ill and, as a result
of the mental illness he is likely to cause serious harm to himself, is likely
to cause serious harm to others, or is (i) suffering severe and abnormal
mental, emotional, or physical distress, (ii) experiencing substantial mental
or physical deterioration of his ability to function independently, which is
exhibited by his inability, except for reasons of indigence, to provide for his
basic needs, including food, clothing, health, or safety, and (iii) unable to
make a rational and informed decision as to whether or not to submit to
treatment.  Tex. Health & Safety Code Ann. '
574.034(a) (Vernon 2003).  To be clear
and convincing under the statute, the evidence must include expert testimony
and, unless waived, evidence of a recent overt act or a continuing pattern of
behavior that tends to confirm either the likelihood of serious harm to the
proposed patient or others or the proposed patient=s
distress and the deterioration of his ability to function.  Id. '
574.034(d).  

Analysis

In
his certificate of medical examination, Dr. Lahiri explained that C.M. heard
voices telling him to harm himself and responded by engaging in Aself injurious@
behavior.  Dr. Orocofsky=s certificate included a note that in
response to the voices, C.M. Ahits
them out@ or Apains them out@
after they Aenter his
body.@  Based upon C.M.=s
self injurious behavior, both doctors concluded in their certificates that C.M.
was likely to cause serious harm to himself. 

At
trial, Dr. Lahiri testified that in response to these voices, C.M. becomes
agitated, bangs his head, and hits his face. 
He also stated that these acts constitute a continuing pattern of
behavior and that C.M. requires close observation as a result of this
conduct.  This is expert testimony of a
continuing pattern of behavior that tends to confirm the likelihood that C.M.
would cause serious harm to himself.








Considering
all the evidence in the light most favorable to the findings, we conclude a
reasonable trier of fact could have formed a firm belief or conviction that
C.M. is likely to cause serious harm to himself.  See In re J.F.C., 96 S.W.3d at
266.  Therefore, the evidence is legally
sufficient to support the trial court=s
order.  See id.

In
addressing C.M.=s factual
sufficiency complaint, we consider the evidence, giving due consideration to
evidence the factfinder could reasonably have found to be clear and
convincing.  In re C.H., 89
S.W.3d at 25.  C.M. did not deny hearing
voices nor did he deny the behavior Dr. Lahiri described.  However, he testified that he does not hear
the voices Aoutside,@ which, by implication, constitutes
testimony that the self injurious behavior would not occur if he were
released.  The trial court was entitled
to disbelieve C.M.=s
testimony and disregard evidence contrary to the State=s
position.  See id.
at 27.  Accordingly, in light of the
entire record, the evidence that the trial court could not have credited in
favor of its findings is not so significant that it could not reasonably form a
firm belief or conviction that C.M. is likely to cause serious harm to
himself.  See id.  Thus, the evidence is factually sufficient to
support the trial court=s
order.  Because we hold the evidence is
both legally and factually sufficient to support the trial court=s order, we overrule C.M.=s sole issue.[1]

 

                                                                   Disposition

We
affirm the trial court=s
order of commitment for temporary inpatient mental health services.

 

 

  
 SAM GRIFFITH   

  
Justice

Opinion
delivered December 21, 2005.

Panel consisted of Worthen, C.J., Griffith, J., and
DeVasto, J.

 

 

 

                                                                      (PUBLISH)











[1] Because the trial court=s
finding that C.M. is likely to cause serious harm to himself is one of the
alternative findings required by section 574.034, see Tex. Health & Safety Code Ann. ' 574.034(a)(2)(A) (Vernon 2003), we need not
address the sufficiency of the evidence to support the trial court=s finding relating to C.M.=s distress, deterioration, and inability to make a
rational informed treatment decision.  See
id. ' 574.034(a)(2)(C).